# 25-2487-cv(L), 25-2503-cv(XAP)

## United States Court of Appeals
### for the
### Second Circuit

➤◄

LIANG WANG,

*Plaintiff – Appellant-Cross-Appellee*,

v.

SAMMY SUSSMAN, VOX MEDIA, LLC, NEW YORK MEDIA, LLC,

*Defendants – Appellees-Cross-Appellants*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (NEW YORK CITY)

**CONSENT BRIEF OF AMICI CURIAE MEDIA ORGANIZATIONS IN
SUPPORT OF DEFENDANTS – APPELLEES-CROSS-APPELLANTS
SEEKING REVERSAL IN PART**

MATTHEW L. SCHAFER
JASSY VICK CAROLAN LLP
*Counsel for Media Amici*
521 Fifth Ave., 17th Floor
New York, New York 10175
(212) 457-1606

April 29, 2026

## CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rules of Appellate Procedure 26.1(a) and 29, amici curiae state as follows:

**Advance Publications, Inc.** certifies that it has no parent corporation and no publicly held corporation owns any of its stock.

**Dow Jones & Company, Inc.** ("Dow Jones"), publisher of The Wall Street Journal, is an indirect subsidiary of News Corporation, a publicly held company. Ruby Newco, LLC, an indirect subsidiary of News Corporation and a non-publicly held company, is the direct parent of Dow Jones. News Preferred Holdings, Inc., a subsidiary of News Corporation, is the direct parent of Ruby Newco, LLC. No publicly traded corporation currently owns 10% or more of the stock of Dow Jones.

**Forbes Media LLC** is a privately owned company and no publicly held corporation owns 10% or more of its stock.

**Fox News Network, LLC** is a wholly owned, indirect subsidiary of Fox Corporation, a publicly traded Delaware corporation.

**Fox Television Stations, LLC** is a wholly owned, indirect subsidiary of Fox Corporation, a publicly traded Delaware corporation.

**HarperCollins Publishers LLC** is a limited liability company whose ultimate parent corporation is News Corporation, a publicly held company. No

i

publicly held company owns ten percent or more of News Corporation's Class B Voting stock. T. Rowe Price Associates Inc. owns more than 10% of News Corporation's Class A non-voting stock.

**The Hearst Corporation** states that it is a privately held company, and no publicly held corporation owns 10% or more of its stock.

**NBCUniversal Media, LLC** is indirectly owned by Comcast Corporation, which is a publicly held corporation. No other publicly held corporation owns ten percent or more of NBCU's stock.

**The New York Times Company** has no parent company and no publicly held corporation owns 10% or more of its stock.

**Nexstar Media Inc.** is a Delaware corporation wholly owned by its parent, Nexstar Media Group, Inc. Nexstar Media Group, Inc. is a publicly held corporation with no public parent corporation. One publicly held corporation, BlackRock, Inc., owns 10% or more of Nexstar Media Group, Inc.'s stock.

**Penguin Random House LLC** is a limited liability company whose ultimate parent corporation is Bertelsmann SE & Co. KGaA, a privately held company. No publicly held corporation owns ten percent (10%) or more of the stock of Penguin Random House LLC.

ii

**Pro Publica, Inc.** is a Delaware nonprofit corporation that is tax-exempt under section 501(c)(3) of the Internal Revenue Code. It has no parent corporation or statutory members and no stock.

**The Reporters Committee for Freedom of the Press** is an unincorporated association of reporters and editors with no parent corporation and no stock.

**Reuters News & Media Inc.** is a Delaware corporation whose parent is Thomson Reuters U.S. LLC, a Delaware limited liability company. Reuters News & Media Inc. and Thomson Reuters U.S. LLC are indirect and wholly owned subsidiaries of Thomson Reuters Corporation, a publicly held corporation that is traded on the Toronto Stock Exchange and Nasdaq Global Select Market (NASDAQ). There are no intermediate parent corporations or subsidiaries of Reuters News & Media Inc. or Thomson Reuters U.S. LLC that are publicly held, and there are no publicly held companies that own 10% or more of Reuters News & Media Inc. or Thomson Reuters U.S. LLC shares.

**Simon & Schuster, LLC** is not a public company. It is indirectly wholly owned by (i) certain of its and its affiliates' directors, officers, and employees and (ii) certain investment vehicles advised by Kohlberg Kravis Roberts & Co. L.P., an indirect subsidiary of KKR & Co. Inc. (NYSE: KKR). No publicly traded organization has economic ownership of 10% or more of Simon & Schuster, LLC.

iii

**USA TODAY Co.** is a publicly traded company with no parent corporation. None of USA TODAY Co.'s subsidiaries are publicly traded and no corporation owns 10 percent or more of USA TODAY Co.'s stock.

# TABLE OF CONTENTS

IDENTITY AND INTERESTS OF AMICI CURIAE ............................................1

SOURCE OF AUTHORITY TO FILE ...................................................3

SUMMARY OF THE ARGUMENT ......................................................4

ARGUMENT ........................................................................7

I.    THE LEGISLATIVE HISTORY OF NEW YORK'S
ANTI-SLAPP LAW DEMONSTRATES AN INTENT TO
BROADLY EXPAND THE LAW IN FAVOR OF
FREEDOM OF SPEECH AND OF THE PRESS ...................................9

    A.    The New York Legislature Passes the 1992 Law...........................9

    B.    The New York Legislature Expands the Law with the
2020 Amendments ........................................................11

II.    SECTION 70-A PERMITS RECOVERY OF COSTS AND
ATTORNEY'S FEES IN THIS CONTEXT ...........................................14

    A.    State Courts Have Construed Section 70-a[1] as Authorizing
Recovery of Costs and Attorney's Fees in This Context .............16

    B.    The District Court's Contrary Interpretation of State
Law Conflicts with the Legislative Purpose of New
York's Anti-SLAPP Law................................................18

III.    SECTION 70-A OF NEW YORK'S ANTI-SLAPP LAW
APPLIES IN FEDERAL COURT .......................................................22

CONCLUSION....................................................................26

# TABLE OF AUTHORITIES

**Cases**

*215 W. 84th St Owner LLC v. Bailey*,
217 A.D.3d 488 (1st Dep't 2023)................................................................17

*Adelson v. Harris*,
774 F.3d 803 (2d Cir. 2014) ............................................................... 22, 23

*Aristocrat Plastic Surgery, P.C. v. Silva*,
206 A.D.3d 26 (1st Dep't 2022)..............................................................6, 17

*Berk v. Choy*,
146 S. Ct. 546 (2026)............................................................................6

*Biagini Realty v. Brightman*,
244 A.D.3d 1173 (2d Dep't 2025)...........................................................6, 16

*Bobulinski v. Tarlov*,
758 F. Supp. 3d 166 (S.D.N.Y. 2024) ..................................... 17, 18, 24

*Chandok v. Klessig*,
632 F.3d 803 (2d Cir. 2011) .............................................................. 23, 24

*Cholowsky v. Civiletti*,
16 Misc. 3d 1138(A) (Sup. Ct., Suffolk Cnty. 2007).....................................1, 11

*Cohen v. Beneficial Industrial Loan Corp.*,
337 U.S. 541 (1949) ................................................................... 6, 23, 24

*Ferri v. Ackerman*,
444 U.S. 193 (1979) ..............................................................................8

*Golan v. Daily News, L.P.*,
214 A.D.3d 558 (1st Dep't 2023)................................................................17

*Goldman v. Abraham Heschel Sch.*,
227 A.D.3d 544 (1st Dep't 2024)................................................................16

*Gottwald v. Sebert*,
220 N.E.3d 621 (N.Y. 2023) ........................................................... *passim*

*Grifols, S.A. v. Yu, et al.*,
No. 24-cv-00576, 2026 WL 836657 (S.D.N.Y. Mar. 26, 2026).................. 25, 26

*Hariri v. Amper*,
51 A.D.3d 146 (1st Dep't 2008)............................................................. 11, 21

vi

*Heilbut v. Cassava Sciences Inc.*,
778 F. Supp. 3d 551 (S.D.N.Y. 2025) ...................................................................19

*InkMango, Inc. v. Warren*,
243 A.D.3d 476 (1st Dep't 2025).........................................................................16

*Isaly v. Garde*,
83 Misc. 3d 379 (Sup. Ct., N.Y. Cnty. 2024)......................................................20

*Jones, et al. v. Abel, et al.*,
No. 25-cv-779, 2026 WL 835364 (S.D.N.Y. Mar. 26, 2026) .............................21

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020) ........................................................................... 22, 24

*Lively v. Wayfarer Studios, LLC*,
No. 24-cv-10049, 2026 WL 852733 (S.D.N.Y. Mar. 27, 2026) ...........................7

*Mable Assets, LLC v. Rachmanov*,
192 A.D.3d 998 (2d Dep't 2021)................................................................... 16, 21

*Nelson v. Ardrey*,
231 A.D.3d 179 (2d Dep't 2024)...........................................................................8

*Palmer v. Amazon.com, Inc.*,
51 F.4th 491 (2d Cir. 2022) ........................................................................... 15, 19

*Paucek v. Shaulis*,
349 F.R.D. 498 (D.N.J. 2025) .............................................................................22

*People v. Ryan*,
8 N.E.2d 313 (N.Y. 1937) ....................................................................................19

*Red Hook Cold Storage Co. v. Dep't of Lab.*,
64 N.E.2d 265 (N.Y. 1945) ..................................................................................21

*Reyes v. City of New York*,
141 F.4th 55 (2d Cir. 2025) ........................................................................... 15, 20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance*,
559 U.S. 393 (2010). ...........................................................................................23

*Sweetpea Ventures Inc. v. Belmamoun*,
231 A.D.3d 460 (1st Dep't 2024)..........................................................................17

*W. Branch Conservation Ass'n, Inc. v. Plan. Bd.*,
222 A.D.2d 513 (2d Dep't 1995)...........................................................................11

*West v. Am. Tel. & Tel. Co.*,
311 U.S. 223 (1940) ....................................................................................... 14, 15

vii

## Statutes

1992 N.Y. Sess. Laws ch. 767 ...............................................................9, 10

N.Y. Civ. Rights Law § 70-a ............................................................ *passim*

N.Y. Civ. Rights Law § 70-a[1] ....................................................... *passim*

N.Y. Civ. Rights Law § 70-a[1][a] ................................................... *passim*

N.Y. Civ. Rights Law § 70-a[1][b] .........................................................16

N.Y. Civ. Rights Law § 70-a[1][c] ........................................................16

N.Y. Civ. Rights Law § 76-a ...............................................................10

N.Y. Civ. Rights Law § 76-a[1] ...........................................................12

N.Y. Civ. Rights Law § 76-a[1][d] .......................................................12

N.Y. Civ. Rights Law § 76-a[2] ............................................................7

## Rules

C.P.L.R. 3211(g) ........................................................................... *passim*

C.P.L.R. 3211(g)(2) ...........................................................................14

C.P.L.R. 3211(g)(3) ...........................................................................14

C.P.L.R. 3212(h) ........................................................................... *passim*

Fed. R. App. P. 29(a)(2) .......................................................................3

Fed. R. Civ. P. 11 .............................................................................24

Fed. R. Civ. P. 12(b) .................................................................... 19, 24

Fed. R. Civ. P. 56 .............................................................................24

Local Rule 29.1 ..................................................................................4

## Other Authorities

Daniel Novack & Christina Lee, *How the New York Anti-SLAPP Law Could Survive the Second Circuit*, Law360 (Aug. 12, 2020) ........................................24

*Free Speech SLAPPs Back: Governor Signs Anti-SLAPP Legislation*, N.Y. State Senate (Nov. 10, 2020) ..................................................5, 14

*Golan v. Daily News, L.P., et al.*, Case No. 2022-04522, Appellant's Brief, NYSCEF Doc No. 6 (1st Dep't Jan. 3, 2023) ......................................17

ix

Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573 (2023) ................................................................. *passim*

N.Y. Bill Jacket, L. 1992, ch. 767 .................................................................. 9, 10

N.Y. Bill Jacket, L. 2020, ch. 250 ................................................................. *passim*

*Senate and Assembly Majorities Advance Anti-SLAPP Legislation to Protect Free Speech*, N.Y. Assembly (July 22, 2020) ............................... 13, 14

**IDENTITY AND INTERESTS OF AMICI CURIAE**

Amici curiae are Advance Publications, Inc., Dow Jones & Company, Inc., Forbes Media LLC, Fox News Network, LLC, Fox Television Stations, LLC, HarperCollins Publishers LLC, The Hearst Corporation, NBCUniversal Media, LLC, The New York Times Company, Nexstar Media Inc., Penguin Random House LLC, Pro Publica, Inc., The Reporters Committee for Freedom of the Press, Reuters News & Media Inc., Simon & Schuster, LLC, and USA TODAY Co. (together, "Media Amici").

News organizations are frequent targets of strategic lawsuits against public participation ("SLAPPs"). These lawsuits are designed not to seek redress for a cognizable harm but instead to punish defendants—often defendant news organizations—for engaging in speech a SLAPP plaintiff finds objectionable. That punishment is not an adverse judgment. Rather, it is being forced to defend oneself in costly and time-intensive—but, ultimately, meritless—litigation. For that reason, news organizations, including several of the Media Amici here, were some of the primary supporters of the 2020 amendments that expanded and strengthened New York's anti-SLAPP law.

While New York adopted an anti-SLAPP law in 1992, it was so narrowly written and construed that fifteen years after its passage, one court observed, "[T]here has never been a case in which a newspaper successfully came under the

1

umbrella protection of this statute." *Cholowsky v. Civiletti*, 16 Misc. 3d 1138(A), *2 (Sup. Ct., Suffolk Cnty. 2007). The 2020 amendments sought to rectify that. They expanded the cases to which the law applied and adopted a mandatory award of costs and attorney's fees upon a showing that the SLAPP lacked a substantial basis. Were these amendments interpreted narrowly like the 1992 law, or were found not to apply in federal court, New York's anti-SLAPP law would be seriously undermined. Media Amici, therefore, have a significant interest in ensuring that federal courts in this Circuit properly apply New York's anti-SLAPP law consistent with the intent of the New York Legislature.

2

3

## SOURCE OF AUTHORITY TO FILE

Counsel for Plaintiff – Appellant-Cross-Appellee and Defendants – Appellees-Cross-Appellants have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2).

## SUMMARY OF THE ARGUMENT[1]

Strategic lawsuits against public participation ("SLAPPs") are baseless suits meant "to stifle the free expression of ideas and[] criticism." N.Y. Bill Jacket, L. 2020, ch. 250, at 7 ("2020 Bill Jacket"). The New York Legislature first tried to disincentivize SLAPP suits in 1992 when it adopted an anti-SLAPP law. Yet, because that law was too narrowly drafted and even more narrowly interpreted, it "failed to accomplish" its objective. *Id.* at 6.

So, in 2020, the Legislature amended the law to "greatly expand" it. *Gottwald v. Sebert*, 220 N.E.3d 621, 633 (N.Y. 2023). One key change was the introduction in Section 70-a of a mandatory award of costs and attorney's fees to SLAPP defendants who demonstrated that a plaintiff's claims lacked a substantial basis in fact and law. *See* N.Y. Civ. Rights Law § 70-a[1]. Previously, the award of costs and attorney's fees was discretionary, and courts "never actually imposed" the award on SLAPP plaintiffs. *See* 2020 Bill Jacket at 6. By mandating an award of costs and attorney's fees, the Legislature ensured that the anti-SLAPP law would better "protect citizens against the threat—and financial reality—of abusive

---

[1] Pursuant to Local Rule 29.1, Media Amici declare that (1) no party's counsel authored the brief in whole or in part; (2) no party or a party's counsel contributed money that was intended to fund preparing or submitting the brief; and (3) no person—other than the amici curiae, its members, or its counsel— contributed money that was intended to fund preparing or submitting the brief and, if so, identifies each such person.

litigation." *Id.* Together with the law's expanded reach, the mandatory fee provision produced "one of the strongest anti-SLAPP suit laws in the nation." *Free Speech SLAPPs Back: Governor Signs Anti-SLAPP Legislation*, N.Y. State Senate, (Nov. 10, 2020), https://tinyurl.com/9vdvs2cz [hereinafter, *Free Speech SLAPPs Back*].

Here, the District Court found Plaintiff's complaint did not plausibly plead a claim for defamation but nevertheless denied Defendants' motion for costs and attorney's fees. It did so not because Defendants failed to demonstrate that Plaintiff's lawsuit lacked a substantial basis in fact and law—the only showing required to obtain a mandatory award of costs and attorney's fees under Section 70-a. *See* N.Y. Civ. Rights Law § 70-a[1][a]. Instead, it interpreted the amendments to that provision as implicitly limiting when and how a SLAPP defendant in federal court could seek costs and attorney's fees. The result is that an amendment meant to "put[] teeth into" the law, *see* 2020 Bill Jacket at 7, now defangs it in one very particular way: depriving SLAPP defendants of the substantive right provided by the New York Legislature to quickly be made whole through an award of costs and attorney's fees. This Court should reject that interpretation.

The District Court premised its holding "on state-law grounds," *see* JA247, but it departed from the anti-SLAPP law's text, state courts' interpretation of that

text, and the Legislature's intent. State courts have repeatedly interpreted Section 70-a[1]—which permits a SLAPP defendant to "maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees"—as allowing defendants to seek costs and attorney's fees pre-answer in the underlying SLAPP. *See, e.g.*, *Biagini Realty v. Brightman*, 244 A.D.3d 1173, 1176 (2d Dep't 2025); *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 32 (1st Dep't 2022). The District Court, however, did not follow these state court interpretations of state law and erroneously departed from the legislative intent that the law be broadly construed to advance its purpose of protecting speech and the press.

Next, while the District Court did not decide whether Section 70-a applies in federal court given its ruling on state law, this Court should find that it does. "[I]n determining whether a state's anti-SLAPP scheme applies in federal court, courts must consider each state [anti-SLAPP] law's unique text and structure."[2] Section 70-a creates both a substantive right in favor of SLAPP defendants and a corresponding liability against SLAPP plaintiffs—all of which are decoupled from any requirement that defendants invoke the law's procedural provisions. *Id.* This is a quintessential example of the kind of substantive state law that applies in federal court. *Berk v. Choy*, 146 S. Ct. 546, 554–55 (2026) (citing *Cohen v. Beneficial*

---

[2] Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573, 598 (2023).

*Industrial Loan Corp.*, 337 U.S. 541, 555–56 (1949)). This view is supported by the "emerging trend" of cases in this Circuit that "favor[] the application of the substantive standards of the New York anti-SLAPP statute in federal court." *Lively v. Wayfarer Studios, LLC*, No. 24-cv-10049, 2026 WL 852733, at *4 (S.D.N.Y. Mar. 27, 2026). This Court should endorse this budding consensus.

For these reasons, Media Amici urge the Court to reverse the District Court's ruling in part and hold consistent with state law that Section 70-a permits seeking costs and attorney's fees in this context and that it applies in federal court.

## ARGUMENT

In amending its anti-SLAPP law in 2020, the New York Legislature made a policy decision to ensure the "'utmost protection'" for freedom of speech and the press by disincentivizing SLAPPs. *See* 2020 Bill Jacket at 5 (citation omitted). The law did so by imposing substantive limits on state law tort claims that, in the Legislature's view, might be abused to threaten such freedoms. *See, e.g.*, N.Y. Civ. Rights Law § 76-a[2] (requiring SLAPP plaintiffs to plead and ultimately to prove that SLAPP defendants acted with actual malice). The anti-SLAPP law also provided a substantive remedy to defendants in the form of an award of costs, attorney's fees, and damages, which was intended to address the financial harm associated with SLAPPs. *See* N.Y. Civ. Rights Law § 70-a[1]. Separately, the

7

Legislature also adopted procedural protections aimed at ensuring the efficient resolution of SLAPPs. *See* C.P.L.R. 3211(g), 3212(h).

Since the adoption of the 2020 amendments, New York courts have, in turn, broadly interpreted the law's various provisions to vindicate its purpose of protecting SLAPP defendants targeted for their speech. *See, e.g.*, *Nelson v. Ardrey*, 231 A.D.3d 179, 185 (2d Dep't 2024) (noting "the intent of the Legislature to redefine New York's anti-SLAPP statute as broadly as possible"). There is no inequity in this. "For when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law." *Ferri v. Ackerman*, 444 U.S. 193, 198 (1979) (citation omitted).

Adopting a narrow interpretation of Section 70-a (as the District Court did here) or finding that Section 70-a does not apply in federal court (as some other courts have) would seriously undermine the New York Legislature's goal to police abuse of its state's tort law. Indeed, doing so would transform a federal forum into a refuge for SLAPP plaintiffs in diversity cases who seek to avoid the substantive burdens and risks the anti-SLAPP law otherwise imposes on them in New York courts. This Court should decline to adopt an interpretation of the anti-SLAPP law that would reward such gamesmanship.

8

**I.  THE LEGISLATIVE HISTORY OF NEW YORK'S ANTI-SLAPP LAW DEMONSTRATES AN INTENT TO BROADLY EXPAND THE LAW IN FAVOR OF FREEDOM OF SPEECH AND OF THE PRESS**

**A. The New York Legislature Passes the 1992 Law**

The New York Legislature originally passed the anti-SLAPP law in 1992. 1992 N.Y. Sess. Laws ch. 767. It did so in response to the "threat of personal damages and litigation costs" from SLAPP suits that plaintiffs with increasing frequency were deploying as "a method of stifling" participation in public affairs. N.Y. Bill Jacket, L. 1992, ch. 767, at 8. It disincentivized such lawsuits by placing hurdles in front of SLAPP plaintiffs and, at the same time, establishing a suite of protections around SLAPP defendants.

First, in C.P.L.R. 3211(g), the Legislature imposed a more onerous pleading standard on plaintiffs whose tort claims target speech on matters of public concern. 1992 N.Y. Sess. Laws ch. 767, § 4. To avoid dismissal in actions involving public petition or participation, the law required SLAPP plaintiffs to demonstrate their claims had "a substantial basis in law or [were] supported by a substantial argument for an extension, modification or reversal of existing law." *Id.* The law made similar changes in C.P.L.R. 3212(h) for motions for summary judgment. *Id.*, § 5.

Second, in Civil Rights Law Section 70-a, the Legislature granted SLAPP defendants a substantive right to costs, fees, and damages resulting from the

9

SLAPP. *Id.*, § 2. To obtain recovery, SLAPP defendants were required to show that the underlying claim was "commenced or continued without a substantial basis in fact and law." *Id.* Additional damages, including other compensatory and punitive damages, were allowed where a SLAPP defendant made additional showings, such as that the SLAPP was intended to harass or intimidate. *Id.*

Finally, in Civil Rights Law Section 76-a, the Legislature defined what claims were "actions involving public petition and participation" and, therefore, were within the ambit of the law. *Id.*, § 3. It narrowly defined that term as only those actions "brought by a public applicant or permittee" that "materially related" to a defendant's efforts to report or comment on a government application or permit. *Id.* Where falsity was material to the underlying claim, the law also required SLAPP plaintiffs to show by clear and convincing evidence that the defendant acted with actual malice. *Id.*

The bill received broad, bipartisan support in the Legislature and from Governor Mario Cuomo. *See* Bill Jacket, L. 1992, ch. 767, at 3–7. In his signing statement, Cuomo described the aim of SLAPPs as "simple and brutal: the individual is to regret ever having entered the public arena." *Id.* at 6. He was concerned, however, that the law addressed just one kind of SLAPP—that resulting from citizen participation in the government permitting process. *Id.* at 7.

10

Considering this narrow scope, he warned that the law may not be "an adequate response . . . to the issue of the moment." *Id.*

Cuomo was right to be concerned. In the years that followed, courts strictly construed the law as one in derogation of the common law. *See Hariri v. Amper*, 51 A.D.3d 146, 150–51 (1st Dep't 2008). Even where courts found that the law did apply, they often exercised their discretion to refuse to award SLAPP defendants costs or attorney's fees. *See, e.g.*, *W. Branch Conservation Ass'n, Inc. v. Plan. Bd.*, 222 A.D.2d 513, 515 (2d Dep't 1995). The result was that no newspaper had ever come "under the umbrella protection of this statute." *Cholowsky*, 16 Misc. 3d 1138(A), *2.

## B. The New York Legislature Expands the Law with the 2020 Amendments

In 2020, recognizing that the anti-SLAPP law had "failed to accomplish [its] objective," State Senator Brad Hoylman and Assemblywoman Helene E. Weinstein proposed "expanding the breadth of the law and also putting teeth into it so as to deter these lawsuits from being brought." *See* 2020 Bill Jacket at 6–7. In doing so, Weinstein cited a concerning rise in SLAPPs meant "to cause those sued to incur significant litigation costs, and to deter others from speaking out for fear of being similarly sued." *Id.* at 7; *see also id.* at 13 (noting that SLAPPs are "designed to deter critical comment," are "retaliatory in nature," and are "an abuse of the

11

court system"). While the 1992 law was intended to deter such lawsuits, it had proven not up to the task. *Id.* at 7.

Initially, Weinstein cited the 1992 law's narrow application to lawsuits involving reporting on government permits or applications. *Id.*; *see also id.* at 5–6. Courts compounded this narrow drafting by then imposing a rule of narrow construction on the law. *Id.* at 7. Moreover, even where the law did apply, Weinstein observed that courts "almost never" imposed the law's "principal remedy": an award of costs and attorney's fees to a SLAPP defendant who demonstrated the claims lacked a substantial basis. *Id.* at 6; *see also id.* at 13 (noting that "defendants rarely see these awards").

The bill aimed to fix these shortcomings by "greatly expand[ing] the . . . coverage offered by the original anti-SLAPP statute." *Gottwald*, 220 N.E.3d at 633; *see also* 2020 Bill Jacket at 13 (noting that the bill "broaden[s] New York's rules regarding S.L.A.P.P."). First, it addressed courts' insistence that the law be narrowly interpreted by broadly defining what constituted an "action involving public petition and participation" to include, essentially, all claims based upon a defendant's public expression on matters of "public interest." N.Y. Civ. Rights Law § 76-a[1]. It further directed courts to construe the term "public interest" "broadly." *Id.*, § 76-a[1][d]. The result was to "broadly widen[] the ambit" of the original law. *See* 2020 Bill Jacket at 7–8.

12

Second, the bill "*require[d]*—rather than merely *allow[ed]*—an award of attorney's fees." *Id.* at 8. As Weinstein explained, making an award of costs and attorney's fees mandatory was intended to "strongly discourag[e] those who attempt to chill free speech." *See Senate and Assembly Majorities Advance Anti-SLAPP Legislation to Protect Free Speech*, N.Y. Assembly (July 22, 2020), https://tinyurl.com/37tzz5uj [hereinafter, *Press Release upon Passage*]. Under the bill, Section 70-a[1] provided (with amendments in bold):

> 1. A defendant in an action involving public petition and participation, as defined in paragraph (a) of subdivision one of section seventy-six-a of this article, may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that:
>
> (a) costs and attorney's fees **[may] shall** be recovered upon a demonstration**, including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules,** that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law  . . .

Finally, the bill amended C.P.L.R. 3211(g) to permit parties to introduce affidavits in support or opposition to a motion to dismiss and requiring a stay of "[a]ll discovery, pending hearings, and motions in the action" during the pendency

13

of any motions to dismiss. *See* C.P.L.R. 3211(g)(2), (3). It made no changes to C.P.L.R. 3212(h), relating to motions for summary judgment.[3]

The Legislature overwhelmingly passed the bill, and Governor Andrew Cuomo signed it into law on November 10, 2020. *See* 2020 Bill Jacket at 1–4. The same day, Hoylman declared that New York now had "one of the strongest anti-SLAPP suit laws in the nation." *See Free Speech SLAPPs Back*, https://tinyurl.com/9vdvs2cz. He also emphasized that the goal of the revision was to "expand[] on the existing statute . . . at a time when advocates and journalists are under attack." *Id.* In short, the law promised to fix the "broken system [that] has led to journalists, consumer advocates, survivors of sexual abuse and others being dragged through the courts on retaliatory legal challenges solely intended to silence them." *See Press Release upon Passage*, https://tinyurl.com/37tzz5uj.

## II. SECTION 70-A PERMITS RECOVERY OF COSTS AND ATTORNEY'S FEES IN THIS CONTEXT

The New York Court of Appeals has the final say as to the proper interpretation of New York law. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). Federal courts must defer to that judgment. *Id.* By the same token, federal courts are "not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is

---

[3] Defendants did not invoke either C.P.L.R. 3211(g) or C.P.L.R. 3212(h) below, and those provisions are not at issue here.

unsound in principle or that another is preferable." *Id.* at 236–37. As the U.S. Supreme Court has instructed, "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* at 237.

When construing state law in the absence of a decision from a state's highest court, federal courts should apply "state-law principles of statutory interpretation." *Reyes v. City of New York*, 141 F.4th 55, 68 (2d Cir. 2025). The guiding principle of statutory interpretation in New York is to effectuate the intent of the Legislature. *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 514 (2d Cir. 2022). To do so, courts should consider the text itself, the "specific context in which [the] statutory language is used," and the "broader context of the statute." *Id.* Because legislative intent is paramount, even the literal text must be interpreted to not "'defeat the general purpose and manifest policy intended to be promoted' by a given statute." *Id.* (citation omitted). In New York, the emphasis on legislative intent means courts should give "considerable weight" to lawmakers' statements concerning legislation, especially those set out in the Bill Jacket. *See Reyes*, 141 F.4th at 69.

15

## A. State Courts Have Construed Section 70-a[1] as Authorizing Recovery of Costs and Attorney's Fees in This Context

The legislative intent behind Section 70-a[1] is clear. As the New York Court of Appeals observed, the Legislature adopted the 2020 amendments to "greatly expand" the protections of the 1992 law. *See Gottwald*, 220 N.E.3d at 633; *see also Mable Assets, LLC v. Rachmanov*, 192 A.D.3d 998, 1000 (2d Dep't 2021) (noting that the 2020 amendments "broaden the scope of the law and afford greater protections" to SLAPP defendants than the 1992 law). "The amendments altered the remedy offered by Section 70-a." *Gottwald*, 220 N.E.3d at 631. Section 70-a[1], it explained, "empowers defendants to 'maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action.'" *Id.* Subsection 70-a[1][a] makes the "award of costs and attorney's fees to defendants . . . mandatory rather than a matter of discretion." *Id.* And, while the 2020 amendments did not alter Subsections 70-a[1][b] & [c], those subsections have "far broader application given the expanded scope of the relevant definitions." *Id.*

While the Court in *Gottwald* did not decide whether an award of costs and fees may be sought pre-answer in the underlying SLAPP case pursuant to Section 70-a[1], intermediate New York appellate courts have—for years—found that it does. *See, e.g.*, *Biagini Realty*, 244 A.D.3d at 1176; *InkMango, Inc. v. Warren*, 243 A.D.3d 476, 477 (1st Dep't 2025); *Goldman v. Abraham Heschel Sch.*, 227 A.D.3d

16

544, 545 (1st Dep't 2024); *Sweetpea Ventures Inc. v. Belmamoun*, 231 A.D.3d 460, 460 (1st Dep't 2024); *215 W. 84th St Owner LLC v. Bailey*, 217 A.D.3d 488, 489–90 (1st Dep't 2023); *Golan v. Daily News, L.P.*, 214 A.D.3d 558, 559 (1st Dep't 2023); *Aristocrat Plastic Surgery, P.C.*, 206 A.D.3d at 32. They have done so despite SLAPP plaintiffs contending (and as the District Court alluded to here, *see* JA244–45) that Section 70-a[1] does not contemplate an award of fees in the underlying SLAPP case unless and until a responsive pleading is filed. *See, e.g.*, *Golan v. Daily News, L.P., et al.*, Case No. 2022-04522, Appellant's Brief, NYSCEF Doc No. 6 at 48–51 (1st Dep't Jan. 3, 2023).

*Bobulinski v. Tarlov*, 758 F. Supp. 3d 166 (S.D.N.Y. 2024), the leading federal case, has followed these state court decisions. Relying on the statutory text, state decisional law, and legislative intent, Judge Oetken concluded there that costs and attorney's fees may be sought in the underlying SLAPP case in federal court, just as in state court. This, irrespective of the particular procedural vehicle by which the defendant obtains dismissal. *Id.* at 188–89 & n.23. Section 70-a allowed SLAPP defendants to seek costs and fees by, among other things, "maintaining an action." *Id.* at 188. Maintaining an action, he observed, included continuing an existing action—here, the underlying SLAPP—by seeking costs and attorney's fees after obtaining a dismissal in the case. *Id.* at 188 & n.22.

17

This interpretation, Judge Oetken wrote, was consistent with the legislative history. Interpreting Section 70-a[1] as permitting the recovery of costs and attorney's fees pre-answer in the underlying SLAPP case allows SLAPP defendants to promptly be made whole. *Id.* at 188–89. To interpret Section 70-a[1] otherwise "would put an additional onus on defendants in SLAPP suits" and "undermin[e] the New York legislature's intent in broadening anti-SLAPP protections to protect defendants and prevent the chilling of speech." *Id.* It would do so by forcing SLAPP defendants into "the same protracted litigation that [the anti-SLAPP statute] was designed to combat." *Id.* at 189 (citation and quotation marks omitted).

### B. The District Court's Contrary Interpretation of State Law Conflicts with the Legislative Purpose of New York's Anti-SLAPP Law

The District Court came to a different view. In brief, it interpreted Section 70-a as allowing SLAPP defendants to seek fees "in different ways." JA244. Pointing first to Section 70-a[1], the District Court explained that a party could "file an action or assert a counterclaim for such fees." JA244. But, the District Court added, "when addressing what happens on a motion to dismiss or motion for summary judgment on a defamation plaintiff's claims," fee recovery was unavailable unless the SLAPP defendant invoked C.P.L.R. 3211(g) or C.P.L.R. 3212(h), which are New York's rules for moving to dismiss or for summary judgment. JA244. It based this on the 2020 addition of the dependent clause now

18

found in Subsection 70-a[1][a], which provides that an adjudication that a SLAPP lacked a substantial basis in fact and law "includ[es] an adjudication pursuant to [C.P.L.R. 3211(g)] or [C.P.L.R. 3212(h)]." JA244. Because Defendants' adjudication was pursuant to Fed. R. Civ. P. 12(b)(6), the District Court denied recovery. JA245. The District Court's decision thus forces Defendants to file a new action in federal court to recover their fees. JA247 (observing that SLAPP defendants that obtained dismissal in federal court "can file a follow-on case seeking fees" (citing *Heilbut v. Cassava Sciences Inc.*, 778 F. Supp. 3d 551 (S.D.N.Y. 2025)).

This interpretation is at odds with the statutory text, *see* Cross-App'ts Br. at 51–53, and impermissibly departs from the holdings of New York's state courts that permit recovery of costs and attorney's fees pre-answer in the underlying SLAPP case, *see supra* at 14. And, importantly, it also violates the rule in New York that "legislative intent is the great and controlling principle." *People v. Ryan*, 8 N.E.2d 313, 315 (N.Y. 1937). Indeed, it transforms an amendment meant to strengthen the New York anti-SLAPP law's protections into one that in some respects implicitly weakens it. *See Palmer*, 51 F.4th at 514 (cautioning courts against an interpretation of New York law that would defeat the general purpose and policy of a statute).

19

The District Court attempted to defend its interpretation by anchoring it in legislative history. Relying on dicta from a single trial court opinion, it contended that the addition of the dependent "including" clause was meant to correct pre-2020 interpretations of Section 70-a[1] "as warranting fees only on an 'action' or 'claim' for fees, and not on a motion at all." JA245 (citing *Isaly v. Garde*, 83 Misc. 3d 379 (Sup. Ct., N.Y. Cnty. 2024)). The legislative history, however, does not bear this out. Instead, as the Court of Appeals explained in *Gottwald*, the addition of "shall" and the dependent clause was meant to ensure fee-shifting would be mandatory. *See Gottwald*, 220 N.E.3d at 631; *see also* 2020 Bill Jacket at 8.

The District Court also attempted to defend its interpretation by invoking general rules of statutory interpretation. In its view, if the New York Legislature wanted to provide for fee-shifting pre-answer in federal court, it "could and would have said so." JA245. But the Legislature did so provide. Section 70-a broadly provides for the recovery of costs and attorney's fees anytime a SLAPP defendant can demonstrate that the underlying SLAPP lacks a "substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a[1][a]. At any rate, the District Court's reasoning fails to account for New York's interpretive approach. *See Reyes*, 141 F.4th at 68–69. New York courts have interpreted the addition of "including" clauses added as part of amendments meant to broaden an existing statute—just

20

like that in Subsection 70-a[1][a]—as illustrative rather than limiting. *See Red Hook Cold Storage Co. v. Dep't of Lab.*, 64 N.E.2d 265, 267 (N.Y. 1945).

Finally, the District Court defended its interpretation as consistent with the principle in New York that statutes in derogation of the common law are to be narrowly interpreted. JA245. But this simply replicates the precise problem—the judiciary's strict construction of the 1992 anti-SLAPP law—that the New York Legislature rectified with the 2020 amendments. *See Hariri*, 51 A.D.3d at 150–51 (strictly construing the 1992 anti-SLAPP statute because it was "in derogation of the common law"). The Sponsor's Memo accompanying the 2020 amendments specifically cites *Hariri* as one of the problems with prior interpretations of the law. *See* 2020 Bill Jacket at 7. Since the adoption of the amendments in 2020, no state court to Media Amici's knowledge has invoked *Hariri* to impose a narrow interpretation on the current anti-SLAPP law as the District Court did here.[4]

With the adoption of the 2020 amendments, the Legislature "broaden[ed] the scope of the law and afford[ed] greater protections to citizens facing litigation arising from their public petition and participation." *Mable Assets, LLC*, 192 A.D.3d at 1000. The legislative history leaves no doubt about the Legislature's

---

[4] To the extent that other federal courts have followed the District Court's reasoning on these points, those decisions too are faulty. *See, e.g., Jones, et al. v. Abel, et al.*, No. 25-cv-779, 2026 WL 835364, at *15 n.4 (S.D.N.Y. Mar. 26, 2026) (collecting cases).

21

intent to significantly strengthen the law or, in Assemblywoman Weinstein's words, to "put[] teeth into it so as to deter these lawsuits from being brought." 2020 Bill Jacket at 7. This Court should not adopt an interpretation of Section 70-a that is contrary to state courts' interpretations of that law and its legislative purpose.

## III. SECTION 70-A OF NEW YORK'S ANTI-SLAPP LAW APPLIES IN FEDERAL COURT

Because the District Court decided Defendants' motion for costs and attorney's fees solely on state law grounds, it did not consider whether Section 70-a applies in federal court. As a substantive law that does not conflict with any Federal Rule of Civil Procedure, Section 70-a applies here.

It bears emphasis that the question here is not whether anti-SLAPP statutes apply in federal court across the board. Instead, "the correct question is 'whether a *particular state's* anti-SLAPP law['s] unique text and structure'" conflicts with the Federal Rules. *See Paucek v. Shaulis*, 349 F.R.D. 498, 512 (D.N.J. 2025) (emphasis added) (quoting Schafer & Valsangikar, *supra*, at 583). Consistent with this principle, this Court has found some anti-SLAPP laws to apply in federal court and some other anti-SLAPP laws not to apply. *Compare Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) *with La Liberte v. Reid*, 966 F.3d 79, 86 n.3 (2d Cir. 2020). Given that New York's anti-SLAPP law is in four parts across two chapters

22

of the Consolidated Laws, the question here is even narrower: whether one of those parts—Section 70-a—applies in federal court.

The application of Section 70-a in federal court is "unproblematic." *Cf. Adelson*, 774 F.3d at 809. For more than seventy-five years, the Supreme Court has recognized that similar fee-shifting statutes apply in federal court. *See Cohen*, 337 U.S. at 555–56. In *Cohen v. Beneficial Industrial Loan Corp.*, the Supreme Court considered the application in federal court of a New Jersey law holding a plaintiff in a derivative action "liable for the expense to which he puts the corporation and other defendants, if he does not make good his claims." *Id.* The Court found that the law—which, like Section 70-a here, made a plaintiff liable for costs and attorney's fees in certain circumstances—applied in federal court because it "create[d] a new liability where none existed before." *Id.*

Consistent with this approach, this Court applied the pre-2020 version of Section 70-a in federal court more than fifteen years ago. *See Chandok v. Klessig*, 632 F.3d 803, 818–19 (2d Cir. 2011). It appears that neither party nor this Court had any doubts as to that law's applicability in federal court.[5] And, this Court,

---

[5] Even though this Court heard argument in *Chandok* just two weeks after the Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance*, "the issue of § 70-a's applicability appears never to have been raised." *See* Schafer & Valsangikar, *supra*, at 594 (citing 559 U.S. 393 (2010)). This silence in such close proximity to the Supreme Court's decision in *Shady Grove* strongly suggests that this Court, as in *Adelson*, believed its application in federal court to be unproblematic. Consistent with *Chandok*, at least eleven district courts

23

applying Section 70-a, found that the defendant in that case had not made the requisite showing under the statute. *Id.*

Despite *Cohen* and *Chandok*, after the adoption of the 2020 amendments, courts in this Circuit initially split as to whether Section 70-a conflicted with Federal Rules of Civil Procedure 11, 12(b), and 56 such that it could not be applied in federal court. *See Bobulinski*, 758 F. Supp. 3d at 186 n.18 (citing Schafer & Valsangikar, *supra*, at 601); *see also id.* at 189 n.24. This confusion seems to have stemmed from lower courts mistaking this Court's ruling in *La Liberte* as to the applicability of California's anti-SLAPP law in federal court as controlling the question of the applicability of New York's anti-SLAPP law. *See, e.g.*, Schafer & Valsangikar, *supra*, at 608–09. These courts, however, failed to account for two admonitions in *La Liberte*. First, this Court cautioned not to ignore textual differences among anti-SLAPP laws. *La Liberte*, 966 F.3d at 86 n.3. And, second, it instructed that an award of attorney's fees "to the prevailing party in any defamation action" would "presumably" apply in federal court.[6] *Id.*

---

applied the pre-2020 amendments version of Section 70-a in federal court. *See* Schafer & Valsangikar, *supra*, at 600 n.188 (collecting cases).

[6] *See also, e.g.*, Daniel Novack & Christina Lee, *How the New York Anti-SLAPP Law Could Survive the Second Circuit*, Law360 (Aug. 12, 2020) ("[*La Liberte*'s] rejection of California's fee-shifting provision was not due to Erie concerns, but because the statute specifically conditioned relief on a successful motion to strike, as opposed to other procedural vehicles. The New York law does not run into this issue, as the fee-shifting provision is not premised on a particular motion being filed . . . ."), *available at* https://tinyurl.com/5723bkzh.

Taking these admonitions into account, other courts in this Circuit have more recently found that Section 70-a applies in federal court. *See, e.g.*, *Grifols, S.A. v. Yu, et al.*, No. 24-cv-00576, 2026 WL 836657, at *4 (S.D.N.Y. Mar. 26, 2026) ("the weight of the authority since [2022] favors the application of the substantive standards of the New York anti-SLAPP statute in federal court."); *see also* Cross-App'ts Br. at 45–46 (collecting cases). These cases have recognized that the New York anti-SLAPP law's unique text and structure decouples its substantive provisions from its procedural provisions. Stated simply, Section 70-a does "no procedural work" at all. *Grifols, S.A.*, 2026 WL 836657, at *5 (citation and marks omitted). Instead, it defines substantive state law—here, an award of costs and attorney's fees—and does not conflict with any Federal Rule. *Id.*; *see also* Schafer & Valsangikar, *supra*, at 599–605. For that reason, it applies in federal court.

Quoting Justice Felix Frankfurter, Judge Liman recently reminded, "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Grifols, S.A.*, 2026 WL 836657, at *6 (citation and marks omitted). While Judge Liman, like others, had previously found Section 70-a inapplicable in federal court, just last month he reversed course. After accounting for the New York law's unique text and structure, he explained that more recent decisions "have focused on a feature of the New York law that the Court did not [previously]

25

appreciate . . . : 'the New York anti-SLAPP law does not have . . . a provision tying fee-shifting to a specific state procedural mechanism.'" *Id.* at \*4. Indeed, that the law's procedural provisions in C.P.L.R. 3211(g) and 3212(h) "might conflict with the Federal Rules of Civil Procedure does not deprive the party on the opposite end of a SLAPP lawsuit from the substantive rights that New York intended to provide" in Civil Rights Law Section 70-a. *Id.* at \*5

This Court should endorse this emerging consensus. Not only is it consistent with Supreme Court precedent controlling the application of substantive state law in federal court, *see* Cross-App'ts Br. at 45–51, it avoids undercutting the important policy choice New York has made to prevent its tort law from becoming a weapon to target protected speech. To find that Section 70-a does not apply in federal court would deprive SLAPP defendants of a speedy way to obtain costs and attorney's fees, while at the same time subjecting them to a SLAPP that might have never been filed if Section 70-a, as interpreted by New York courts, applied with full force. This Court should vindicate New York's interest in providing the "utmost protection" to freedom of speech and of the press. *See* 2020 Bill Jacket at 5.

## CONCLUSION

For the reasons set forth above, Media Amici urge this Court to reverse the District Court's ruling in part and hold consistent with state law that Section 70-a

permits seeking costs and attorney's fees in this context and that Section 70-a

applies in federal court.

Dated: April 29, 2026                  Respectfully submitted,

                                        */s/ Matthew L. Schafer*
                                        Matthew L. Schafer
                                        JASSY VICK CAROLAN LLP
                                        521 Fifth Ave., 17th Floor
                                        New York, NY 10175
                                        T: (212) 457-1606
                                        F: (212) 457-1607
                                        mschafer@jassyvick.com

                                        *Counsel for Media Amici*

27

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29 and 32, undersigned counsel certifies that the foregoing brief:

1. Complies with the type-volume limitation of Local Rules 29.1(c) and 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,009 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font and case names are appropriately styled in italics.

Dated: April 29, 2026

/s/ Matthew L. Schafer
Matthew L. Schafer
*Counsel for Media Amici*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2026, I caused the foregoing *Consent Brief of Amici Curiae Media Organizations in Support of Defendants – Appellees-Cross-Appellants Seeking Reversal in Part*, to be electronically filed with the Clerk of Court using ACMS, which will automatically send notice of such filing to counsel of record.

Dated: April 29, 2026

/s/ Matthew L. Schafer
Matthew L. Schafer
*Counsel for Media Amici*